**DEPARTMENT OF THE ARMY**
HEADQUARTERS UNITED STATES ARMY FORCES COMMAND
Army Atlanta Contracting Center
1309 Anderson Way SW
FORT MCPHERSON GEORGIA 30330-1096

REPLY TO
AFLG-PRC (715k) 9 April 02

MEMORANDUM FOR: SEE DISTRIBUTION

SUBJECT: Award Fee Evaluation, Contract DAKF11-00-C-0006, Performance Period is 1 December 2001 - 28 February 2002

1. The enclosed Contracting Officer's award fee recommendation report is provided for your review and information. The award fee information is procurement sensitive therefore must be held in strict confidence.

2. The Contractor will make a presentation to the Award Fee Review Board on 11 April 2002, at 0900 hours, in the DIS Main Conference Room located on the first floor of Building 181, Fort McPherson, GA.

3. Please call Jesse Watkins at 404-464-4111 if you have any questions concerning the Award Fee Review Board.

4. *AACC - Customer & Quality First!*

K Jan Stowell

Encl

K. JAN STOWELL
Contracting Officer

DISTRIBUTION:
USAG Fort McPherson DIS, Mr. Mike Sturgis
USAG Fort McPherson DIS, Mr. Jim Mathis
USAG Fort McPherson DIS, Mr. Marvin Head
USAG Fort McPherson SJA, Ms. Cheryl Smith
HQ FORSCOM, DCSLOG, AACC, Mr. Ron Howell

**INSTALLATION SUPPORT SERVICES CENTER**
**Contract DAKF11-00-C-0006**
**Griffin Services, Inc.**
**Award Fee Board**

**AGENDA**
**11 April 2002**

1. Opening Remarks

   a. Purpose of meeting

   b. Sign-in sheet

2. Contractor Presentation

   a. Griffin Services, Inc., ISSC Project Manager Presentation

   b. Discussions with contractor

   c. Dismiss contractor

3. Award Fee Board Determination and Discussions

   a. Reminders:

      - Sensitivity of Award Fee Board documents. All documents must be returned to the Contracting Officer.
      - The Board will approve, modify or disapprove recommendations and document the decision as appropriate

   b. Discussion:

      - Time of next Quarterly Award Fee Board
      - Tentative date 20 June 2002

   c. Fee Determination

   d. Next review period: 1 March 2002 - 31 May 2002

4. Dismissal

INSTALLATION SUPPORT SERVICES CENTER
Contract DAKF11-00-C-0006
Griffin Services, Inc.
Award Fee Board

TABLE OF CONTENTS
Quarterly Performance Period
1 December 2001 - 28 February 2002


| TAB | SUBJECT |
|---|---|
| 1 | Scope of Work Evaluated |
| 2 | Contractor's Performance Evaluation |
| 2a | COR Evaluation (December 2001) |
| 2b | COR Evaluation (January 2002) |
| 2c | COR Evaluation (February 2002) |
| 2d | ACO Evaluation (Dec 2001-Feb 2002) |
| 3 | Summary Calculation of Award Fee Evaluation Points |
| 4 | Award Fee Pool Amount |
| 5 | ACO Award Fee Recommendation |
| 6 | Criteria Weights |
| 7 | Adjective and Numerical Rating Description |
| 8 | Award Fee Conversion Chart |
| 9 | Evaluation Criteria Definitions |

**INSTALLATION SUPPORT SERVICES CENTER**
**Contract DAKF11-00-C-0006**
**Griffin Services, Inc.**
**Award Fee Board**

**Scope of Evaluated Work**
**Quarterly Performance Period**
**1 December 2001 - 28 February 2002**

1. General Contract Information. Contract DAKF11-00-C-0006 is a cost-plus award-fee (CPAF) contract to perform Installation Support Services for Fort McPherson, Fort Gillem and U.S. Army Recreational Area - Lake Allatoona, Georgia, including AR 5-9 area of responsibility, Inter-Service Support Agreements (ISSA), Memorandums of Understanding (MOU), Memorandums of Agreement (MOA) and designated tenant units. The contract was awarded to Griffin Services, Inc. of Atlanta, Georgia on 13 October 2000 based on competitive proposals. The current estimated value of the contract is $22,938,345.44. Contract performance is a 12-month base period with a 6-week acceleration phase. The contract contains four one-year option periods. Performance period including all options shall be through 28 February 2006.

2. Contract Scope of Work: The major functional areas included in the Performance Work Statement are: Supply and Services; Environmental Services; Real Property Operations, Maintenance, Repair, Construction and Other Related Services; Transportation Services; Equipment Maintenance Services and Administration and Automation.

3. Evaluated Work. The award fee evaluation period covers work performed during the period of 1 December 2001 - 28 February 2002. This evaluated period includes all functional areas.

4. Evaluations. As specified in the Award Fee Plan, the fee evaluation is based on evaluation of contractor performance reported by the Contracting Officer's Representative (COR) and the Quality Assurance Evaluators (QAE), as well as evaluations performed by contract administration personnel. The COR currently appointed by the Contracting Officer and submitting evaluations reports for the specified rating period is Mr. Marvin Head, USAG Fort McPherson, DIS, Fort McPherson, GA. The COR and his designated QAEs perform monthly evaluations in accordance with the Government quality assurance surveillance plan. The COR assigns the numerical ratings monthly for the sub-criteria.

AFZK-IS-OF

07 January 2002

MEMORANDUM FOR Commander, FORSCOM, Army Atlanta Contracting Center, ATTN: AFLG-PRC (Mr. Jesse Watkins), Bldg 131, and 1301 Anderson Way, Fort McPherson, GA 30330-6000

SUBJECT: Consolidated Performance Evaluation for DAKF11-OO-C-0006, Performance Period 01 December – 31 December 2001.

1. Enclosed is the supporting documentation for the performance evaluation period beginning 01 December – 31 December 2001 submitted by the Installation Service Support Center, Fort McPherson, GA.

2. Based on this summary (encl attached), the overall performance for the month of December, meets contract requirements. The rating for this Period is (Good 74%) supported by the enclosed documentation. This report is a compilation of data from personal observation, customer comments, and observations from government managers, functional experts and government Quality Assurance Evaluators.

See Enclosure 1

3. The Contractor has completed ten (10) months at the contract full performance level. On site management initiatives by the contractor in the areas of problem prevention and/or resolution has become evident, with exception of areas rated below satisfactory.

4. Evaluations for each work center are provided below:

a. Performance of Work:

(1) Real Property and Facilities Maintenance: (Unsatisfactory 69%)

Billeting building 40 with personnel living there went without heat and domestic hot water for three days. Contractor had ordered the wrong frame and shaft size of the new motor for the pump. ACOR called another contractor and purchased the right size motor and called another contractor to come and install the motor so Billeting would have heat and some hot water.

During the installation of the new motor at Billeting bldg 40 a slight gas smell was noticed and reported to Griffin Services about the leak. Contractor took the cover off the boiler and stated there was a gas leak at the gas valve. Instead of fixing the leak contractor went outside and started talking on the Government Cell Phone. ACOR asked contractor whom he was talking to and he said that it was a friend.

ACOR informed contractor that the Government Cell Phone was for Official Business Only as well as Government equipment. Contractor replied to ACOR that no one had told (Griffin Services) about proper usage of Government equipment. All this time of talking with ACOR and on the Government Cell Phone should have been time spent fixing the gas leak, which could cause life, or limb if an explosion had occurred. Reviewing the Boiler Log Book showed contractor knew of the problems but the problems were passed from one shift to another and was not being worked.

While repairs were being done to boiler at building 40, ACOR noticed a hole in the firebox. If proper PM and inspection had been performed on this boiler, the hole in the firebox would have been found before the Government (ACOR) QAE found the fault. Griffin Services should have found this on their daily boiler checks if they had been performing them. This could have been a potential Fire Hazard if it had not been found by the ACOR. During fire up the hole would have got bigger and flames would have expanded outside the combustion chamber. This is a good example of Non Qualified personnel operating boilers. This boiler is located in a billeting building with personnel who sleep in the building. COR and ACOR are deeply concerned with boiler operation post wide.

Boiler problem reported on 30 November 2001 at building 210 Fort Gillem went unnoticed by contractor due to lack of monitoring their computer and not making their inspection rounds on boilers. This is a very serious safety issue. Griffin Services did not only fail to diagnose the problem right but ordered the wrong part on 04 December 2001 with a priority 2 for a downed boiler. ACOR step in on 12 December 2001 and raised the priority 2 to priority 1 and ordered the correct part (gas valve). The gas valve came in 13 December 2001; Griffin Services was called to come and install the part and responded with "we will install the gas valve on 14 December 2001". ACOR said wrong answer and contact Griffin Supervisor received no response so ACOR contacted another contractor to come in and install the part. When new contractor arrived it only took them 4 hours to do what Griffin Services had not been able to accomplish from 30 Nov – 14 Dec 01. The gas regulator was also set wrong by Griffin Services and corrected by the other contractor. It appears, that without the old gas valve to check it could have been a regulator problem and not a gas valve. This could let gas burn backup onto the burner tubes and could have been a very serious safety hazard.

The boiler in building 483 had been down about 3 weeks with a circulating pump problem. ACOR question Griffin Services about the status of the boiler they ordered on 30 November 2001 on a priority 2. A downed boiler should always be a priority 1 for repair parts with no heat in the building.

The number 2 boiler at building 160 was down due to the Jordan Feeder water valve being down. Griffin Services had rebuilt the valve about 2 weeks before and the boiler was still flooding and going down. Griffin Services finally called a contractor to repair the boiler and got the system on line. Griffin Services never notified the Government that there was a problem with this boiler.

December 2001 observations for the post at Fort Gillem by QAE revealed his concerns that Griffin Services is not taking ownership of their responsibilities as far as streetlight are concerned. When QAE does his inspection on Fort Gillem he see light staying on during daylight hours, and lights that have not burned in months still not repaired. Griffin has a monthly Preventive Maintenance (PM) for streetlights to go around and check for problems. It's just not being done. When QAE notified Griffin Services about lights out or lights staying on during the day then Griffin does respond and performs work, but that's not the way the (PM) is suppose to be done.

QAE has come upon Griffin employees sitting in their trucks and not working, and have reported the incidence to their supervisors about the situation and Griffin supervisors have not responded back to the QAE if anything has been done to correct the problem or not. QAE has furnished e-mails and statements for records for these problems.

Exterior Electrical – need improvement as far as going by (PM) instead of waiting for QAE to tell Griffin streetlights need repair.

Work Order Desk – QAE has e-mail from Doug Ascher about the quick services he had gotten from Carol at the W.O. Desk and QAE for getting E.M.C. to respond to a power outage at Lake Alatoona. (December rating 85%).

Commode leaking at building 481 became a destructive situation when Griffin employee went to repair the commode, he forgot to shut off the water supply to the commode, and caused the building to flood. Water from open valve totally damaged the carpet throughout and will have to be replaced. Also, water caused electrical problem and burned out the Commander's printer. (December rating 20%)

Occupant in quarters 136 called service order desk and reported low water pressure on 12 Dec 01. Griffin employee showed up checked the situation out told occupant that the water pressure coming into the quarters 136 was the problem and departed. Griffin employee returned made an attempt to restore the water pressure and broke the pipe and caused another problem. Contractor told occupant at quarters 136 he had to order a part and left and never returned.

The Government had to call in another contractor to come out and make the repairs, which only took an hour to do. (December rating 20%).

Maintain & Repair of Grounds & Surface Areas Services: (December rating 84%)

Work Reception Services: (December Rating 73%).

Carpentry Services (December Rating 84%).

Indoors and Outdoors Electrical Services (December Rating 81%).

Occupants of Quarters 139A (Ft Gillem) smelled smoke coming from their heating system on 5 Jan 02. Occupant called (464-2116) and left a message on the answering machine. Never received a response. Occupant than called the Fire Department. Fire Department responded at 1430 hours, found the fan motor for the heating system had burnt out, power to motor had been shut off, and no further damage was found. Fire Department called (464-2116) and left a message on the answering machine. At 1830 hours Fire Department personnel went to check Quarters 139A and found out no one from Griffin Services had shown up to fix the heat. On 6 Jan 02 occupant called (464-2116) again and spoke with tech at building 200 Fort McPherson and informed them that they had no heat and tech responded he would be out. An hour later the occupant called back again and spoke with the tech again, the tech responded that he looked for the quarters for 45 minutes and couldn't find it. Tech was looking for quarters at Fort McPherson, which he should have been looking at quarters at Fort Gillem. Then tech stated to occupant that he didn't know if someone would be by to repair the problem or not. At 0924 hours the Fire Department again called (464-2116) to report the problem and again got the answering machine and left a message. The low temp on 5 Jan 02 was 19 degrees and the low temp on 6 Jan 02 was 37 degrees. The high for 6 Jan 02 was 44 degrees and all this time the occupants had no heat. As of 14 Jan 02 no service order has been entered into the system.

Painting Services and Signs: (December Rating 84%).

See Enclosure 2

(2) Equipment Maintenance (Very Good 86%)

Most of the problems that are found or seen by the QAE's are discussed and corrected either on the spot or in a timely manner.

Emergency Services: (December Rating 85%)

Technical Inspections: (December Rating 85%)

On Site Repair: (December Rating 85%)

Work Requests: (December Rating 85%)

Repair Parts and Supply: (December Rating 85%)

Safety Inspections: (December Rating 90%)

DS/GS Maintenance: (December Rating 85%)

Assemblies and Subassemblies Maintenance: (December Rating 85%)

Fuel and Electric Components: (December 86%)

Hydraulic Components: (December Rating 85%)

Tire Services: (December Rating 87%)

Misc. Maintenance Services: (December Rating 87%)

Vehicle and Equipment Body Work (December Rating 85%)

Fabrications Services: (December Rating 87%)

Furniture Repair: (December Rating 87%)

Wash Rack Services (December Rating 87%)

Technical Inspections for Turn-In: (December Rating 87%)

Miscellaneous CCTV Camera, Video & Security Systems (December Rating 87%)

Miscellaneous Audio Equipment (December Rating 87%)

Miscellaneous Radio Equipment (December Rating 87%)

Miscellaneous Fire Alarm Equipment (December Rating 87%)

See Enclosure 3

(3) Environmental: (Good 80%)

Griffin Services Environmental Office has done a very good job with the hazardous waste turn-in and both of the 90 days yards look very neat and clean. The Griffin Environmental team is doing a fine job.

See Enclosure 4

(4) Transportation: (Excellent 92%)

Fleet Manager: (December Rating 90%)

Passenger Movement: (December Rating 100%)

Movement Coordinator: (December Rating 87%)

Freight: (December Rating 90%)

See Enclosure 5

(5) Supply Services: (Very Good 87%)

Excess Management: (December Rating 80%)

Ammunition Supply Point: (December Rating 87%)

Property Book: (December Rating 94%)

DRMO: (December Rating 87%)

Requisitions Process & Data Entry: (December Rating 85%)

See Enclosure 6

(6) Quality: (Unsatisfactory 69%)

Billeting building 40; with personnel living there went without heat or domestic hot water for three days.

Billeting building 40 gas smells was noticed and reported to Griffin Services. Contractor came, took the cover off the boiler and stated leak was at the gas valve. Instead of fixing the leak contractor went outside and was making a personal call on Government Cell Phone. Review of Boiler Log Book showed contractor knew of the gas leak but problems were passed from one shift to another and no repairs were being done.

Billeting building 40; hole in the firebox was found by ACOR. This should have been found by Griffin Services on their daily boiler checks.

Boiler problem at building 210 Fort Gillem went unnoticed by contractor due to lack of monitoring their computer and not making their inspection rounds on boilers.

Boiler in building 483 had been down 3 weeks with a circulating pump problem when ACOR discovered the problem had the priority 2 changed to priority 01 and got the boiler fixed.

Griffin Services rebuilt the number 2 valve at building 160 and two weeks later the boiler was still flooding and going down. Griffin Services called another contractor to come in and fix the problem.

Griffin Services is not taking ownership of their responsibilities as far as streetlights are concerned. QAE has to constantly ask them to fix the lights. These same streetlights have been down for months.

Commode leaking at building 481 caused a destructive situation due to Griffin employee failure to shut the water off before trying to do repairs on the commode. Water from the pipe totally damaged the carpet throughout and will have to be replaced. Water caused electrical problem and burned out computer printer.

Occupants at Quarters 139A smelled smoke 5 Jan 02, called 464-2116, answering machine was on, left message then called Fire Department. Fire Department called 464-2116; answering machine still on, message was left. On 6 Jan 02 Occupant called 464-2116 again, answering machine still on, left message. Fire Department came, called 464-2116, answering machine still on. Weather on 5 Jan 02 was 19 degrees and on 6 Jan 02 weather was 37 degrees. As of 14 Jan 02 no service order has been entered into the system for Occupant at Quarters 139A.

(7) Timeliness: (Unsatisfactory 63%)

This area has been a roller coaster of improving than dropping to lackadaisical work. Some consistence needs to be established.

b. Quality Control (QC):

(1) System Implementation and Maintenance: (Very Good 87%)

Data Entry Accuracy has been very good.

During the installation of ICP 13-01 (Incremental Change Package 13-01) some serious issues with critical data in IFS tables was discovered and corrected.

Software for Supply 2000 was installed and no problems were reported.

See Enclosure 7

(2) Corrective Action: (Unsatisfactory 69%)

Much improvement needs to be done in the Timeliness and Responsiveness on the job site. Corrective actions established for immediate quality control problems have not been effective and efficient. Griffin personnel need to work better with QAE's to get the job done.

(3) Documentation, Records, CDRLs, and Reports: (Unsatisfactory 69%)

The contractor must emphasis QC responsibility at the supervisory level and monitor training needs in the QC section. Follow-up Quality Control reviews are not being performed as should be.

c. Technical Management:

(1) Staffing and Personnel: (Unsatisfactory 69%)

Griffin Services workforce is not yet fully stabilized nor have they demonstrated appropriate skill levels to perform the work in some of the work centers.

(2) Problem Resolution and Communication: (Satisfactory 70%)

Workmanship and Record keeping has improved.

(3) Efficiency: (Unsatisfactory 69%)

The contractor has not demonstrated efficiency in several of the work centers. Not responding to their answering machine and taking care of emergency calls on boilers. Also not repairing streetlight that has been out for months.

(4) Safety: (Unsatisfactory 50%)

Gas leak at building 40 that Griffin employee didn't take the time to fix right but did take the time to call a friend on his Government Cell Phone, which could have resulted in a life or limb situation, is totally unacceptable.

Personnel living in Billeting building 40 going without heat and hot water for three days during the winter are unacceptable. This could cause personnel to have health problems or make preexisting health problems worse.

Hole in firebox at boiler in building 40 could have caused numerous lives to be lost if ACOR had not of found the problem. This is unacceptable.

d. Business Management:

(1) Local Autonomy: (Satisfactory 70%)

Teamwork among the contractor and government key personnel has improved.

(2) Management and Employee Relations: (Unsatisfactory 69%)

There has been no information provided to the COR addressing the contractor's programs for employee incentives or his social and economic programs. The contractor continues to have a turnover within his workforce. Too many employees do not demonstrate qualifications for the tasks they have been given to do. Employees appear on the worksite ill prepared to accomplish the job to completion.

(3) Contract Management: (Unsatisfactory 69%)

In specific functional areas (Boilers/Plumbing/Exterior Lighting) work has been incomplete, untimely and costly to the government. Government still has to bring in outside vendors to do the work Griffin Services is not qualified to do. All other areas contractor has been very responsive and workmanship has been good.

(4) Government Property: (Very Good 85%)
Both Government and Griffin Services Property Administrators have procedures in place and there is a good working rapport for ensuring control, inventory and management of government property.

e. Budget and Cost Control:

(1) Efficiency: (Unsatisfactory 69%)

The ability of contractor's personnel must improve in the Boiler/Plumbing/Exterior Lighting areas. Accomplishing work correctly and completely continues to need improvement.

(2) Budget Program and Cost: (Very Good 85%)

Griffin is striving to reduce facilities maintenance costs. Their average cost per service order ($94) is well below the goal of $130.

(3) Cost Verification and allocation: (Good 80 %)

Griffin appears to be verifying and properly allocating costs to the appropriate functional area.

(4) Budget Programming and Cost Control: (Unsatisfactory 69%)

Griffin Services has done a poor job of cost control, particularly in the area of Boilers/Plumbing/Exterior Lighting areas. Other contractor's are called in to correct and complete work that Griffin personnel are just not qualified to perform.

See Enclosure 8

4. For additional information concerning this report contact is Marvin E. Head, (404) 464-4451, BLDG 181, Fort McPherson, GA.

Encls (8)

Marvin E. Head

MARVIN E. HEAD
Contracting Officer's Representative (COR)
PWS Contract Administration Office
Installation Support Service Center (ISSC)

AFZK-IS-OF 04 February 2002

MEMORANDUM FOR Commander, FORSCOM, Army Atlanta Contracting Center, ATTN: AFLG-PRC (Mr. Jesse Watkins), Bldg 131, and 1301 Anderson way, Fort McPherson, GA 30330-6000

SUBJECT: Consolidated Performance Evaluation for DAKF11-00-C-0006, Performance Period 01 January – 31 January 2002.

1. Enclosed is the supporting documentation for the performance evaluation period beginning 01 January – 31 January 2002 submitted by the Installation Service Support Center, Fort McPherson, GA.

2. Based on this summary (encl attached), the overall performance for the month of January, meets contract requirements. The rating for this Period is (68%) supported by the enclosed documentation. This report is a compilation of data from personal observation, customer comments, and observations from government managers, functional experts and government Quality Assurance Evaluators.

See Enclosure 1

3. The Contractor has completed eleven (11) months at the contract full performance level. On site management various initiatives (by the contractor) in the areas of problem prevention and/or resolution continues to be a challenge.

4. Evaluations for each work center are provided below:

a. Performance of Work:

(1) Real Property and Facilities Maintenance: (Unsatisfactory 68%)

Customer (Jim Davie) asked status on upgrade of the gutters on bldg 101. QAE called Griffin about status. Griffin employee came to QAE office and stated that Griffin Services didn't clean gutters. QAE informed Griffin employee that the PWS states Griffin Services are responsible for cleaning gutters. QAE informed contractor that his understanding was that contractor would no longer do gutters on a standing work order or P.M. but as needed basis. Contractor had plenty of time to get the gutters cleaned during the day but due to the making excuses and waiting to be ask by the QAE to get the work done due to customer complaint; caused the work to be done on overtime. Government should not have to keep paying overtime to Griffin Services when it's non-emergency.