(6) Quality: (Unsatisfactory 69%)

Billeting building 40; with personnel living there went without heat or domestic hot water for three days.

Billeting building 40 gas smells was noticed and reported to Griffin Services. Contractor came, took the cover off the boiler and stated leak was at the gas valve. Instead of fixing the leak contractor went outside and was making a personal call on Government Cell Phone. Review of Boiler Log Book showed contractor knew of the gas leak but problems were passed from one shift to another and no repairs were being done.

Billeting building 40; hole in the firebox was found by ACOR. This should have been found by Griffin Services on their daily boiler checks.

Boiler problem at building 210 Fort Gillem went unnoticed by contractor due to lack of monitoring their computer and not making their inspection rounds on boilers.

Boiler in building 483 had been down 3 weeks with a circulating pump problem when ACOR discovered the problem had the priority 2 changed to priority 01 and got the boiler fixed.

Griffin Services rebuilt the number 2 valve at building 160 and two weeks later the boiler was still flooding and going down. Griffin Services called another contractor to come in and fix the problem.

Griffin Services is not taking ownership of their responsibilities as far as streetlights are concerned. QAE has to constantly ask them to fix the lights. These same streetlights have been down for months.

Commode leaking at building 481 caused a destructive situation due to Griffin employee failure to shut the water off before trying to do repairs on the commode. Water from the pipe totally damaged the carpet throughout and will have to be replaced. Water caused electrical problem and burned out computer printer.

Occupants at Quarters 139A smelled smoke 5 Jan 02, called 464-2116, answering machine was on, left message then called Fire Department. Fire Department called 464-2116; answering machine still on, message was left. On 6 Jan 02 Occupant called 464-2116 again, answering machine still on, left message. Fire Department came, called 464-2116, answering machine still on. Weather on 5 Jan 02 was 19 degrees and on 6 Jan 02 weather was 37 degrees. As of 14 Jan 02 no service order has been entered into the system for Occupant at Quarters 139A.

(7) Timeliness: (Unsatisfactory 63%)

This area has been a roller coaster of improving than dropping to lackadaisical work. Some consistence needs to be established.

b. Quality Control (QC):

(1) System Implementation and Maintenance: (Very Good 87%)

Data Entry Accuracy has been very good.

During the installation of ICP 13-01 (Incremental Change Package 13-01) some serious issues with critical data in IFS tables was discovered and corrected.

Software for Supply 2000 was installed and no problems were reported.

See Enclosure 7

(2) Corrective Action: (Unsatisfactory 69%)

Much improvement needs to be done in the Timeliness and Responsiveness on the job site. Corrective actions established for immediate quality control problems have not been effective and efficient. Griffin personnel need to work better with QAE's to get the job done.

(3) Documentation, Records, CDRLs, and Reports: (Unsatisfactory 69%)

The contractor must emphasis QC responsibility at the supervisory level and monitor training needs in the QC section. Follow-up Quality Control reviews are not being performed as should be.

c. Technical Management:

(1) Staffing and Personnel: (Unsatisfactory 69%)

Griffin Services workforce is not yet fully stabilized nor have they demonstrated appropriate skill levels to perform the work in some of the work centers.

(2) Problem Resolution and Communication: (Satisfactory 70%)

Workmanship and Record keeping has improved.

(3) Efficiency: (Unsatisfactory 69%)

The contractor has not demonstrated efficiency in several of the work centers. Not responding to their answering machine and taking care of emergency calls on boilers. Also not repairing streetlight that has been out for months.

(4) Safety: (Unsatisfactory 50%)

Gas leak at building 40 that Griffin employee didn't take the time to fix right but did take the time to call a friend on his Government Cell Phone, which could have resulted in a life or limb situation, is totally unacceptable.

Personnel living in Billeting building 40 going without heat and hot water for three days during the winter are unacceptable. This could cause personnel to have health problems or make preexisting health problems worse.

Hole in firebox at boiler in building 40 could have caused numerous lives to be lost if ACOR had not of found the problem. This is unacceptable.

d. Business Management:

(1) Local Autonomy: (Satisfactory 70%)

Teamwork among the contractor and government key personnel has improved.

(2) Management and Employee Relations: (Unsatisfactory 69%)

There has been no information provided to the COR addressing the contractor's programs for employee incentives or his social and economic programs. The contractor continues to have a turnover within his workforce. Too many employees do not demonstrate qualifications for the tasks they have been given to do. Employees appear on the worksite ill prepared to accomplish the job to completion.

(3) Contract Management: (Unsatisfactory 69%)

In specific functional areas (Boilers/Plumbing/Exterior Lighting) work has been incomplete, untimely and costly to the government. Government still has to bring in outside vendors to do the work Griffin Services is not qualified to do. All other areas contractor has been very responsive and workmanship has been good.

(4) Government Property: (Very Good 85%)
Both Government and Griffin Services Property Administrators have procedures in place and there is a good working rapport for ensuring control, inventory and management of government property.

e. Budget and Cost Control:

(1) Efficiency: (Unsatisfactory 69%)

The ability of contractor's personnel must improve in the Boiler/Plumbing/Exterior Lighting areas. Accomplishing work correctly and completely continues to need improvement.

(2) Budget Program and Cost: (Very Good 85%)

Griffin is striving to reduce facilities maintenance costs. Their average cost per service order ($94) is well below the goal of $130.

(3) Cost Verification and allocation: (Good 80 %)

Griffin appears to be verifying and properly allocating costs to the appropriate functional area.

(4) Budget Programming and Cost Control: (Unsatisfactory 69%)

Griffin Services has done a poor job of cost control, particularly in the area of Boilers/Plumbing/Exterior Lighting areas. Other contractor's are called in to correct and complete work that Griffin personnel are just not qualified to perform.

See Enclosure 8

4. For additional information concerning this report contact is Marvin E. Head, (404) 464-4451, BLDG 181, Fort McPherson, GA.

Encls (8)

MARVIN E. HEAD
Contracting Officer's Representative (COR)
PWS Contract Administration Office
Installation Support Service Center (ISSC)

AFZK-IS-OF 04 February 2002

MEMORANDUM FOR Commander, FORSCOM, Army Atlanta Contracting Center, ATTN: AFLG-PRC (Mr. Jesse Watkins), Bldg 131, and 1301 Anderson way, Fort McPherson, GA 30330-6000

SUBJECT: Consolidated Performance Evaluation for DAKF11-00-C-0006, Performance Period 01 January – 31 January 2002.

1. Enclosed is the supporting documentation for the performance evaluation period beginning 01 January – 31 January 2002 submitted by the Installation Service Support Center, Fort McPherson, GA.

2. Based on this summary (encl attached), the overall performance for the month of January, meets contract requirements. The rating for this Period is (68%) supported by the enclosed documentation. This report is a compilation of data from personal observation, customer comments, and observations from government managers, functional experts and government Quality Assurance Evaluators.

See Enclosure 1

3. The Contractor has completed eleven (11) months at the contract full performance level. On site management various initiatives (by the contractor) in the areas of problem prevention and/or resolution continues to be a challenge.

4. Evaluations for each work center are provided below:

a. Performance of Work:

(1) Real Property and Facilities Maintenance: (Unsatisfactory 68%)

Customer (Jim Davie) asked status on upgrade of the gutters on bldg 101. QAE called Griffin about status. Griffin employee came to QAE office and stated that Griffin Services didn't clean gutters. QAE informed Griffin employee that the PWS states Griffin Services are responsible for cleaning gutters. QAE informed contractor that his understanding was that contractor would no longer do gutters on a standing work order or P.M. but as needed basis. Contractor had plenty of time to get the gutters cleaned during the day but due to the making excuses and waiting to be ask by the QAE to get the work done due to customer complaint; caused the work to be done on overtime. Government should not have to keep paying overtime to Griffin Services when it's non-emergency.