VT
Griffin Services

***VIA CERTIFIED MAIL***

July 20, 2004

K. Jan Stowell
AACC/AFLG-PRC
1301 Anderson Way, SW
Fort McPherson, GA 30330

Subject: Contract No. DAKF11-00-C-0006 – Request for a Final Decision of the Contracting Officer

Dear Ms. Stowell:

VT Griffin Services, Inc. (formerly know as Griffin Services, Inc and referred to as "GSI" herein) submits this claim in the amount of $434,921.00 for a final decision of the Contracting Officer, in accordance with contract clause I.52, "Disputes (OCT 1995) – Alternate 1 (DEC 1991)," FAR 52.233-1.

The entire amount of this claim represents additional fee to be paid to GSI for extra work and other changes during contract performance. Also, this claim is in addition to amounts claimed in the three previous "Disputes" claims dated August 1, 2003 and received by the Government on August 7, 2003 for which a final decision of the Contracting Officer has not been issued. In this claim, GSI assumes that all estimated costs that are the subject of the three previous "Disputes" claims will be resolved in GSI's favor. Consequently, no increases to contract estimated costs are included in this claim.

The areas of contract performance for which equitable adjustments are sought include the following:

1. Supplies and Materials purchases required to be accomplished by GSI during performance;
2. Bollard Maintenance change;
3. Litter Removal at Fort Gillem change;
4. Swimming Pool Water Treatment and Boiler Work changes;
5. Contingency Support changes;
6. Roads & Grounds changes;
7. Special Events Support changes; and
8. Total Contract Fee adjustment as a result of a cardinal change to the contract.



An ISO 9001:2000 Certified Company

VT Griffin Services, Inc.
www.griffinserv.com

Griffin Services

Enclosed with this letter is an MS Excel spreadsheet containing a summary worksheet that shows the estimated costs and fee associated with each of the above eight items, eight worksheets that show the pricing details associated with each item, and one worksheet that shows the pricing detail associated with development of a direct cost pricing rate for Management and Support, which is treated as apportioned effort and applied in the pricing of each area of equitable adjustment.

The basis of this claim is that throughout contract performance, significant extra work was performed in connection with numerous contract changes subsequent to Modification P00002 for which equitable adjustments of the contract pricing, delivery, or other terms and conditions were made, contrary to the requirements of clause 52.243-2, "Changes – Cost Reimbursement) (AUG 1987) (Alternate II) (APR 1984)."

After Modifications P00001 and P00002, which were supplemental agreements executed during the first months of contract performance, not one single modification to this contract was executed as a supplemental agreement with the signatures of both contracting parties to denote accord and satisfaction for equitable adjustment of the contract. Additionally, the scope and nature of the changes arising during contract performance were so significant that GSI believes a cardinal change arose because the actual, overall requirements for contract performance differed so dramatically from the requirements expressed in the solicitation upon which award of the original contract had been made.

Contract changes that arose during performance of this contract involved:

- Extra work requirements;
- Government prescription of the method and manner of performance where the description of requirements was performance-based; and
- Implementation of an award fee determination process that was fatally flawed – and made arbitrary and capricious – by the Government's failure to recognize the actual requirements for performance, including valid changes that had arisen during contract performance.

The last contract modification provided to GSI was Modification P00018, and our records indicate that Modification P00014 was never issued. As noted above, Modifications P00001 and P00002 were supplemental agreements, but Modifications P00006, P00007, P00008, P00009, P00010, P00011, P00012, P00013, P00015, P00016 and P00018 were unilateral modifications, even though they addressed contractual performance and/or pricing matters that should have required formal agreement by the contractor. Items 1 through 3 of this claim were among the matters addressed in Modifications P00006 through P00018, but they were either addressed without fee or without fully acknowledging their effects for the entire period of contract performance.

Additionally, certain modifications between P00006 and P00018 increased estimated costs and added funding, and the Government ascribed these cost increases to "overruns." However, as shown in this claim, a significant portion of the overall increase to estimated costs of contract performance reflected in Modifications P00006 through P00018 was attributable to extra work associated with items 4 through 7 of this claim. Further, GSI had requested modifications several times for the work described in items 4 through 7 of this claim, but the Government did not respond to these requests for modifications. Instead, it

merely continued to add funding to the contract unilaterally in order to pay GSI invoices, citing the additional estimated costs as "overruns" without regard to the facts and circumstances surrounding performance.

GSI maintains that there were no true "overruns" on this contract. While we concede that some cost growth had occurred as a result of factors beyond GSI's control, the overall increase to contract Total Estimated Costs was not the result of GSI's failure to control costs. If anything, careful examination of all the facts and circumstances surrounding performance shows that GSI's cost control efforts should have been considered outstanding. Outlined below is a brief narrative concerning each of the eight areas of equitable adjustment in this claim.

**1. Supplies and Materials purchases required to be accomplished by GSI during performance.** The solicitation upon which award of this contract was based – RFP DAKF11-98-R-0008 – contained no requirements contemplating contractor purchase of supplies and materials necessary for contract performance. In Amendment 0002 to the RFP, issued on/about May 3, 1999, the first part of Offeror inquiry #11 read, "Is it the Government's intent to require the contractor to rely exclusively on U.S. Army supply system for the supplies and materials required for performance under this contract?" The Government's response – incorporated into RFP Amendment 0002 as Attachment J11 – read, "Yes, it is the Government's intent to require the contractor to rely exclusively on the U.S. Army supply system for supplies and materials required for performance under this contract."

GSI relied on this information in preparation of its proposal, and its pricing proposal clearly identified only a few specific items of equipment and materials that would be acquired during phase-in and used throughout contract performance. However, from the earliest stages of contract performance, GSI was required to purchase supplies and materials for contract performance because the U.S. Army supply system could not or would not respond timely. Beyond increasing GSI's estimated costs of performance, as shown in the attached actual cost information included in this claim, lack of supplies and materials that were to be provided by the Government also adversely affected GSI's ability to perform services and performance evaluations in the award fee determination process as well.

GSI purchase of supplies and materials was added to the contract in Modification P00011, effective March 1, 2002, citing a GSI proposal dated February 25, 2002 that called for the addition of one Full-Time Equivalent (FTE) to the work force for purchasing. Modification P00011 also added $150,000 to contract estimated costs for Option Year 1 only to cover purchased supplies and materials. However, as noted earlier, Modification P00011 was issued unilaterally, and it did not include equitable adjustment of either Base Fee or the Award Fee Pool as a result of this change, nor did it adequately address the effects of this change on the estimated costs of performance. Actual costs for purchased supplies and materials during the Base Year of contract performance were $698,804 and actual costs for purchased supplies and materials during Option Year 1 were $928,640.

GSI had provided the Government with budgetary information during a meeting on/about August 9, 2001 on the increased estimated costs of performance as a result of the requirement to purchase supplies and materials, noting that approximately $100,000 already had been expended for purchased supplies and materials. On/about August 28, 2001, GSI

submitted a formal proposal to the Contracting Officer requesting the addition of two FTEs to accommodate contractor purchases of supplies and materials. Clearly, the effects of purchasing workload and the costs of the supplies and materials purchased had a significant effect on the total estimated costs of contract performance and on the contractor's ability to perform, but no action was taken by the Government until the second year of contract performance. And beyond the fact that the effects of this change during the first contract year were completed ignored in Modification P00011, the unilaterally established adjustment to contract pricing for the second contract year was woefully inadequate.

This claim seeks adjustment of contract fee in the amount of $118,111 as a result of GSI purchases of supplies and materials during contract performance that were beyond the purchasing responsibility of the contractor as contemplated by the requirements of the contract when it was awarded. For purposes of determining the amount of fee considered appropriate by GSI for equitable adjustment, 6% of total estimated costs is claimed, based upon fee rates included in GSI's original bid for this contract. Total increased costs identified for this change include:

- Direct costs of supplies and materials purchased ($1,627,444);
- Direct costs for the additional FTE as cited in Modification P00011 ($47,603);
- Apportioned direct Management and Support costs ($217,756); and
- Corporate G&A ($75,712).

Total direct costs for materials purchased are based upon actual costs incurred. Total direct labor costs for the additional FTE to effect purchases of supplies and materials are based upon the proposal cited by the Government in Modification P00011, even though GSI actually incurred direct labor costs for purchasing supplies and materials during the first contract year, and also incurred direct labor costs beyond the additional FTE in overall performance related to the purchase of supplies and materials. Additional direct costs for Management and Support apportioned effort are included because Management and Support is required for all activity conducted under the contract.

As shown in the last spreadsheet attached to this claim, Management and Support apportioned effort – developed from the relationship between the direct costs for the on-site Management and Support CLIN (AG) and all other direct costs of the contract – equated to a rate of 13% of total direct costs. This cost relationship resulted in an effective rate of approximately 14% for Management and Support in GSI's original bid, but the actual cost relationship calculated out to a rate of 13% through Modification P00018, so the lower rate was used for this equitable adjustment claim.

Although the majority of costs included in this particular claim area involve non-labor costs, GSI considers application of the full, 13% Management and Support apportioned effort rate appropriate to non-labor costs because the contract was never adjusted to compensate the contractor for purchasing activity undertaken during the first contract year, and for both the first and second contract years, significant other labor costs were incurred in connection with receiving, incoming inspection and acceptance, and further processing of supplies and materials purchased, including any labor costs associated with screening the U.S. Army supply system prior to purchase.

Beyond the instant additional fee claimed here as equitable adjustment for purchased supplies and materials, however, are the effects of the Government's failure to provide supplies and materials timely on the overall evaluations of GSI performance in the award fee determination process under the contract. The only instance where GSI was provided written information on award fee evaluations was for the award fee period from September 2001 through November 2001. The debriefing information received by GSI for this award fee period did not even acknowledge that a problem existed with respect to the Government's failure to provide supplies and materials timely. But GSI had informally stated several times that the Government's failure to provide supplies and materials timely was affecting GSI's ability to perform, and in August of 2001 GSI formally advised the Government that at least one cause underlying the apparent increases to contract estimated costs was the unplanned requirement for GSI to purchase supplies and materials that should have been provided by the Government.
As indicated above, GSI has no written information from award fee evaluations conducted during contract performance other than the period from September 2001 through November 2001, and if the Government's records do not reflect consideration of the Government's repeated failure to provide supplies and materials timely during performance as part of the award fee determination process, then there is a serious, very wide gap between the data assessed in connection with the award fee determination process and the true facts and circumstances surrounding the contractor's actual performance. The problems associated with the Government's failure to provide supplies and materials began during the first month of contract performance, when the Alternate Contracting Officer's Representative (ACOR), who also served as the Government's Property Administrator, did not timely transfer items necessary for completing work under the contract – a ladder in one notable instance – and GSI was promptly criticized for the delay in performance.

To the best of GSI's knowledge and belief, all increased estimated costs for matérials have been billed to the Government under the contract, but some of these costs have not been paid and form part of the previous, invoices "Disputes" of August 1, 2003.

**2. Bollard Maintenance.** This claim item was the subject of Modification P00008 to the contract, but no adjustment was included for the second year of contract performance, and the adjustment made to the pricing for the first year of contract performance included an increase to estimated costs only, without adjustment of G&A, Base Fee or Award Fee. Modification P00008 was issued unilaterally, and GSI claims that there was no accord and satisfaction and no actual equitable adjustment made under the contract for this change.

Increased estimated direct costs for this change are based on the information transmitted to the Government on February 5, 2002, which shows increased costs for both contract years as a result of the extra work caused by this change. Direct costs for Management and Support apportioned effort also have been applied at 13% of the direct costs associated with the Bollard Maintenance change to compensate GSI for additional supervision, quality control inspection and other on-site management and support effort related to the extra work performed. After application of the corporate G&A rate of 4% of total direct costs, GSI has claimed additional fee in the amount of $5,007. To the best of GSI's knowledge and belief, all increased estimated costs associated with this change have been billed and reimbursed under the contract.

3. **Litter Removal at Fort Gillem.** This change was addressed in Modification P00011, but the period applicable to the pricing cited in the modification was not specific with respect to which periods of contract performance were covered, and the pricing adjustment was limited to increased costs only, without adjustment of G&A, Base Fee or Award Fee. Modification P00011 was issued unilaterally and GSI claims that there was no actual equitable adjustment made under the contract for this change.

Increased direct costs for this change include Base Year costs identified in writing to the Government on June 26, 2002 and the GSI summary report of June 18, 2002 for Option Year 1 costs, to which we have applied Management and Support direct costs at the 13% rate discussed earlier. Again, Management and Support apportioned effort compensates GSI for the additional supervision, quality control inspection and other on-site management and support effort related to the extra work performed. After application of the corporate G&A rate of 4% of total direct costs, GSI has claimed additional fee in the amount of $4,212. To the best of GSI's knowledge and belief, all increased estimated costs associated with this change have been billed and reimbursed under the contract.

4. **Swimming Pool Water Treatment and Boiler Work.** Requirements for this work commenced during the first year of contract performance and, although some of the costs incurred were invoiced by GSI during the second year of contract performance, all costs relate to performance during the Base Year. Except for Management and Support costs, all other costs incurred by GSI for direct performance of the extra work represented by this component of our claim were for subcontracted effort from National Chemical, a local specialty vendor.

The work performed involved monitoring and treatment of the water in swimming pools, water treatment for the USARC facility at the base, and other work related to boiler water treatment and the cooling towers for facilities 200 and 315, along with wet storage and analytical diagnosis for boilers performed between July and September 2001. Materials costs also were billed by National Chemical, but these costs have been excluded from this component of our claim since they would be covered by the first item of this claim, Supplies and Materials purchased by GSI.

GSI had advised the Government early during the Base Year that swimming pool water treatment was not covered by the requirements of the contract Performance Work Statement (PWS), and several iterations of proposals were submitted to the Government in 2001 identifying the estimated costs for this work. To the best of GSI's knowledge and belief, the Government had a prior contract with National Chemical for the work performed in connection with this change, but that prior contract had expired and the work was transferred over to GSI, and the same vendor was used by GSI. In August 2001, GSI was advised that a modification would be issued to cover this changed work, but no modification was ever issued.

Total increased estimated costs for this change are based upon actual costs, as shown in the attached spreadsheet. Again, materials costs have been excluded from our equitable adjustment calculation. In addition to the direct costs for subcontracted effort (exclusive of materials), we have applied Management and Support direct apportioned effort at the rate of 13%. G&A at the rate of 4% has been applied to the total estimated costs and additional fee