VENABLE LLP

8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182-2707

Telephone 703-760-1600
Facsimile 703-821-8949

www.venable.com

June 8, 2005

***VIA HAND-DELIVERY***

Recorder
Armed Services Board of Contract Appeals
Skyline Six, Room 703
5109 Leesburg Pike
Falls Church, Virginia 22041-3208

**Re: ASBCA NO. 55008**
**Appeal of VT Griffin Services, Inc.**
**Under Contract No. DAKF11-00-C-0006**

**COMPLAINT**

VT Griffin Services, Inc. ("GSI"), by counsel, alleges the following in support of its Complaint:

**PARTIES**

1. The Appellant in this case is GSI, a Georgia corporation with its principal place of business in Atlanta, Georgia.

2. The Government is the Department of the Army, Army Contracting Agency, Southern Region, Southern Region Contracting Center (the "Army").

**JURISDICTION**

3. The ASBCA has jurisdiction over this appeal under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613.

VENABLE LLP

4. On September 30, 2004, GSI submitted a properly certified claim to the Contracting Officer for breach of contract and an award fee equitable adjustment in the amount of $280,747.00.

5. To date, no Contracting Officer's Final Decision has yet been issued. It has now been more than more than seven months (over 200 days) since GSI filed its certified claim.

6. On May 10, 2005, GSI filed a timely Notice of Appeal with this Board. GSI received notice of the docketing of its Appeal on May 11, 2005.

**BACKGROUND**

7. On October 13, 2000, after conducting an A-76 procurement, the Army awarded GSI Contract Number DAKF11-00-C-0006 (the "Contract") to provide Installation Support Services at Fort McPherson, Fort Gillem and the U.S. Army Recreational Area Lake Allatoona – all located in the state of Georgia.

8. The Contract was awarded on a cost-plus-fee-award basis, according to which the amount of the award fee was determined based on the Army's subjective evaluation of GSI's performance.

9. The Contract provided for a period of performance of one base year plus four option years, for a total duration of five years.

10. The Contract also provided for a Phase-In period of approximately three (3) months commencing on March 1, 2001.

11. Shortly after the Contract was awarded, however, the Army requested that GSI consider accelerating the Phase-In and assume full performance earlier than originally

contemplated because of the unanticipated departure of many of the Government personnel that were expected to perform the required services until GSI took over the Contract.

12. Accordingly, during December 2000 and early January 2001, GSI engaged in lengthy negotiations with the Army over the terms for Modifications P00001 and P00002, eventually agreeing to begin Phase-In on January 16, 2001 and commence full performance of the Contract on March 1, 2001, which was about four months earlier than required by the original Contract.

13. Modification P00001 accelerated the performance of specified tasks, accelerated the performance start date, added costs for Phase-In and the accelerated portions of the Contract, and increased the total estimated amount of the Contract, among other things.

14. Modification P00002 revised the Performance Work Statement ("PWS"), incorporated new Department of Labor Wage Determinations, added required Clauses to the Contract, and added new reporting requirements, among other things.

15. Both Modifications were bilateral agreements negotiated by the parties.

16. GSI commenced performance of the Contract on March 1, 2001 and made the immediate and unwelcome discovery that the Army personnel responsible for administering the Contract resented the fact that the A-76 procurement process resulted in the services being converted from Army personnel to GSI and therefore were hostile to GSI taking over the Contract.

17. As a consequence, GSI was faced with having to perform in an environment marked by defiance, obstruction and a total lack of cooperation.

VENABLE LLP

18. In fact, only one hour into performance of the accelerated Phase-In, GSI received what amounted to a cure notice from the Fee Determination Official, who sent an e-mail that began with the observation that "[w]hile I understand that we are very early in the accelerated phase-in of the Contract the initial indications are not very good."

19. The e-mail went on to identify the very same issues that had been the subject of discussions during the lengthy negotiations that took place throughout December and early January when the parties were hammering out the terms for the performance accelerations.

20. Such antipathy continued throughout GSI's performance, as demonstrated by a staff meeting that took place the following year. The staff meeting was attended by the Garrison Commander at Fort McPherson, GSI's Project Manager, and the Contracting Officer's Representative ("COR"), among other personnel. At that meeting, the Garrison Commander asked the COR "[h]ow do you communicate with the contractor?" The COR responded "[w]ith CDRs [Contract Deficiency Reports]."

21. Throughout Contract performance, the Army unreasonably downgraded GSI's performance for delays caused by the Government or for the purported failure to perform work or provide equipment that clearly was not part of the Contract and that was based on the Army's unreasonable interpretation of the Contract.

22. For example, the Contract required GSI to mow specified grounds areas but contained no requirement that GSI edge the areas that it mowed. Moreover, the Army had at least one active contract with a local contractor that included the requirements for edging. Notwithstanding the fact that edging services were not part of GSI's Contract, and were provided

under other contracts with other contractors, the Army nevertheless held GSI accountable for performing edging services.

23. Furthermore, although the Contract stated that GSI was required to mow improved grounds a maximum of once per week during the summer months, the Army nonetheless demanded that GSI mow such areas, including a parade field, three times a week or more.

24. Particularly telling is the fact that the Army's mandate for more frequent mowing was based on a standard calling for the maintenance of grass at a specific height. Meanwhile, the Contract contained no such requirement and, instead, required only that GSI mow at designated intervals (depending on the season) with the mower equipment set to a specified height – not that the grass itself be maintained at a specific height.

25. The Army also required GSI to, among other things, monitor and treat swimming pool water, trim plants, move and clean areas outside the base, and clean leaves from the nature trail on a daily basis. None of this work was covered by the Contract.

26. GSI also was required to perform contingency and special events support services that exceeded the labor, time and performance costs of the Contract.

27. The Army also arbitrarily and unreasonably failed to comply with its own Quality Assurance Plan ("QASP") during Contract performance, which was a document that outlined the parameters for GSI's performance and how the Army would inspect the performed services.

28. When GSI notified the Army Contracting Officer that Contract Deficiency Reports were being improperly issued in violation of the QASP because, for example, GSI's

VENABLE LLP

level of performance in fact met the required parameters, the Contracting Officer responded by stating in an e-mail dated September 12, 2002 that the QASP "could be changed five times a day if I want to," indicating her unreasonable interpretation that the Army need never comply with the existing plan because it could be changed at will in the future to suit the Army.

29. As a result of the Army's failure to follow the guidance outlined in the QASP, GSI was subjected to arbitrary and unreasonable award fee determinations.

30. The Army also failed to comply with the Contract by performing required evaluations and meeting with GSI to discuss those evaluations.

31. The Contract stated that "[t]he amount of the award fee earned for each evaluation period . . . shall be determined by the Government' subjective evaluation of the Contractor's performance." Clause H.3.

32. Accordingly, the Army was required to evaluate GSI's performance before making any determination about the award fee earned.

33. The Contract went on to describe the performance criteria that would serve as the basis for determining the amount of the award fee, including (1) performance of work, (2) quality control, (3) technical management, (4) business management, and (5) budget and cost control. *Id.*

34. There also were numerous subfactors identified under each performance criteria that also were required to be considered. *Id.*

35. The Contract further stated:

> The Government will perform a monthly evaluation of the Contractor's performance according to criteria stated above. The Government may elect to allow the Contractor's input in the monthly evaluation if the Government deems such input would clarify or explain significant occurrences or Contractor actions. It is anticipated that evaluations will be conducted quarterly. After evaluation is complete the Government will meet with the Contractor to discuss the results of the evaluation. The intent of this meeting is to reach a common understanding of the level and adequacy of the contractor's performance. Contractor performance shortcomings and successes will be openly and frankly discussed with the overall intent of improving mission support. The Government may provide recommendations on methods for performance improvement, however acceptance or implementation of any such recommendation rests solely with the Contractor and shall [not] relieve the Contractor from the requirement of meeting any or all requirements of the contract.

*Id.*

36. Contrary to the terms of the Contract as quoted in the preceding paragraph, the Army failed to meet with GSI quarterly "to discuss the results of the evaluation."

37. In fact, GSI repeatedly requested written documentation regarding the Army's award fee determinations, but the Army refused to provide such documentation to GSI.

38. On January 25, 2002, after numerous written requests for documentation relating to previous award fee determinations, GSI's Director of Operations submitted a formal request for a Contracting Officer's Final Decision regarding the documentation for the award fee determinations. The Contracting Officer ignored the request and never provided a Final Decision.

VENABLE LLP

39. Without issuing a Contracting Officer's Final Decision, the Army eventually provided GSI with documentation covering only the September 2001 through November 2001 award fee period, which was the period immediately preceding GSI's request.

40. This evaluation documentation was replete with inaccurate characterizations of GSI's performance as it related to the actual Contract requirements.

41. The Army eventually terminated GSI's Contract for its own convenience. Accordingly, GSI's performance concluded on February 28, 2003.

42. On September 30, 2004, GSI submitted a certified claim and request for a Contracting Officer's Final Decision seeking an award fee adjustment in the amount of $280,747.00, as well as damages for breach of contract.

43. To date, no Contracting Officer's Final Decision has ever been issued regarding GSI's claim.

44. Accordingly, on May 10, 2005, GSI appealed the matter to the Armed Services Board of Contract Appeals.

**COUNT I**
**Breach Of Contract**
**(Failure To Properly Perform Required Evaluations And Meet With GSI)**

45. GSI incorporates each allegation in the preceding paragraphs as if fully set forth herein.

46. The Army failed to perform all monthly and quarterly evaluations in accordance with the Contract terms.

VENABLE LLP

47. The Army has failed to meet with GSI "to discuss the results of the evaluation" and to "openly and frankly" discuss any performance shortcomings and successes, as required by the Contract.

48. To the extent the Army performed any evaluations, those evaluations were inaccurate, arbitrary and unreasonable.

**COUNT II**
**Breach Of Contract**
**(Failure To Pay Total Award Fee Earned By GSI)**

49. GSI incorporates each allegation in the preceding paragraphs as if fully set forth herein.

50. The Army recommended deductions from the award fee that were arbitrary, indiscriminate and without justification.

51. As a result, the Army failed to demonstrate entitlement to deductions from the award fee.

52. The Army has refused to pay any additional award fee to GSI, notwithstanding the fact that GSI properly earned additional award fee.

**COUNT II**
**Breach of Contract**
**(Failure To Equitably Adjust The Award Fee)**

53. GSI incorporates each allegation in the preceding paragraphs as if fully set forth herein.

VENABLE LLP

54. Throughout GSI's performance, the Army made numerous unilateral changes that increased the amount of work performed by GSI, the amount of time required to perform, and the costs for performance.

55. In addition, the Army failed to cooperate with GSI to facilitate Contract performance and engaged in conduct that actually hindered GSI's performance.

56. The Army's changes and conduct caused disruptions and delays that impeded Contract performance through no fault of GSI.

57. The Army failed to consider the cumulative impact of the additional work and the Army's disruptive conduct when determining the award fee.

58. As a result, the Army's award fee determination was unreasonably low and failed to comply with the Contract.

59. The Army has refused to grant an equitable adjustment to increase the award fee to account for the cumulative impact of the additional work, disruptions, and delays caused by the Army.

## CONCLUSION AND REQUEST FOR RELIEF

GSI hereby requests that this Board find (1) that the Army breached the Contract by failing to properly perform required evaluations and meet with GSI, (2) the Army breached the Contract by failing to pay the total award fee properly earned by GSI, (3) the Army breached the contract by failing to equitably adjust the award fee to account for the cumulative impact of additional work and the Army's disruptive conduct, which hindered GSI's performance, and (4)

VENABLE LLP

that GSI is entitled to payment of an amount to be determined at trial, which shall total at least $280,747.00, together with any interest or attorneys' fees to be awarded under the Contract Disputes Act and Equal Access to Justice Act, and such other relief as the Board deems proper.

Respectfully requested,

Lars E. Anderson
VENABLE, BAETJER AND HOWARD, L.L.P.
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
Telephone No.: (703) 760-1600
Telecopier No.: (703) 821-8949

*LEA/kws*

::ODMA\PCDOCS\MC1DOCS1\184601\1

VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182-2707
Telephone 703-760-1600
Facsimile 703-821-8949
www.venable.com

Lars E. Anderson
(703) 760-1605
leanderson@venable.com

August 24, 2005

***VIA FACSIMILE (703) 681-8535***

Recorder
ARMED SERVICES BOARD OF CONTRACT APPEALS
Skyline Six, Room 703
5109 Leesburg Pike
Falls Church, Virginia 22041-3208

**Re: ASBCA NO. 55008**
**Appeal of VT Griffin Services, Inc.**
**Under Contract No. DAKF11-00-C-0006**

## NOTICE OF WITHDRAWALOF APPEAL

Reference is made to the Army's pending Motion to Dismiss the subject Appeal on the basis of an alleged lack of timeliness. It has been determined that it is not in the interest of judicial economy to contest such a motion. Therefore, VT Griffin Services, Inc. ("VT Griffin"), by counsel, hereby notifies the Armed Services Board of Contract Appeals and the Department of the Army, Army Contracting Agency, that VT Griffin voluntarily withdraws, without prejudice, its appeal in the above-captioned matter.

Respectfully submitted,

Lars E. Anderson
*Counsel for VT Griffin Services, Inc.*

cc: CPT Geraldine Chanel, JA (*via facsimile (703) 696-1535)*
Trial Attorney
Office of the Judge Advocate General
JALS-CA
Department of the Army
Southern Region Contracting Center



::ODMA\PCDOCS\MC1DOCS1\189430\1

ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| VT Griffin Services, Inc. | ) | ASBCA No. 55008 |
| | ) | |
| Under Contract No. DAKF11-00-C-0006 | ) | |

APPEARANCE FOR THE APPELLANT: Lars E. Anderson, Esq.
Venable LLP
Vienna, VA

APPEARANCES FOR THE GOVERNMENT: Craig S. Clarke, Esq.
Acting Chief Trial Attorney
CPT Geraldine Chanel, JA
Trial Attorney

ORDER OF DISMISSAL

The parties have agreed to a dismissal of this appeal. Accordingly, the appeal is dismissed.

Dated: 25 August 2005

/s/ Mark N. Stempler
MARK N. STEMPLER
Vice Chairman
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Order of Dismissal of the Armed Services Board of Contract Appeals in ASBCA No. 55008, Appeal of VT Griffin Services, Inc., rendered in conformance with the Board's Charter.

Dated: AUG 2 6 2005

[signature]
CATHERINE A. STANTON
Recorder, Armed Services
Board of Contract Appeals